## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **JULIE BAUER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **NO: 1:18-cv-00092** |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE HOLMES** |
| **TRINITY MILLER, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Pending before the Court is Julie Bauer's pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus challenging her 2014 conviction for one count of attempted first-degree murder. Bauer is an inmate of the Women's Therapeutic Residential Center in Henning, Tennessee, where she currently is serving twenty-nine years of imprisonment in the Tennessee Department of Correction. (Doc. No. 1).

Respondent Trinity Miller has responded to the petition (Doc. No. 13). The petition is ripe for review, and this Court has jurisdiction pursuant to 28 U.S.C. § 2241(d). Having fully considered the record, the Court finds that an evidentiary hearing is not needed, and Petitioner is not entitled to relief. The petition therefore will be denied and this action will be dismissed.

### I.      Procedural History

On February 24, 2014, Petitioner entered a best-interest guilty plea to one count of attempted first-degree murder in exchange for a 29-year sentence. (Doc. No. 12, Attach. 1 at 143). She did not file a direct appeal.

Petitioner subsequently filed a timely pro se petition for post-conviction relief. (*Id*. at 81-166). The post-conviction court appointed counsel, who filed an amended petition. (*Id*. at 168, 171-78). Following an evidentiary hearing, the post-conviction court denied relief. (*Id*. at 183-96).

On appeal of the denial of post-conviction relief, the Tennessee Court of Criminal Appeals affirmed. *Bauer v. State*, No. M2017-00120-CCA-R3-PC, 2018 WL 1883488, at *1 (Tenn. Crim. App. Apr. 19, 2018), *perm. app. denied* (Tenn. Aug. 8, 2018). The Tennessee Supreme Court declined discretionary review. (Doc. No. 12, Attach. 11 at 871).

On December 14, 2018, Petitioner placed the present habeas petition into the prison mail system.[1] (Doc. No. 1 at 16). By Order entered on February 8, 2019, the Court directed Respondent to file an answer, plead or otherwise respond to the petition in conformance with Habeas Rule 5. (Doc. No. 7). Respondent filed a response on April 16, 2019, conceding that the petition is timely and urging the Court to dismiss the petition. (Doc. No. 13).

Petitioner asserts a single claim for relief:

> Whether trial counsel was ineffective by allowing Petitioner to sign the plea agreement without reserving two certified questions of law regarding issues with an Interstate Agreement on Detainers ("IAD") and speedy trial issues.

(Doc. No. 1 at 5).

## III. Summary of the Evidence

The Tennessee Court of Criminal Appeals summarized the proof adduced at Petitioner's post-conviction hearing as follows:

---

[1] Under the "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988), and the Sixth Circuit's subsequent extension of that rule in *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir. 2002) and *Scott v. Evans*, 116 Fed. App'x 699, 701 (6th Cir. 2004), a prisoner's legal mail is considered "filed" when she deposits his mail in the prison mail system to be forwarded to the Clerk of Court. Pursuant to this authority, the Court finds that Petitioner filed her petition on December 14, 2018. (Doc. No. 1 at 16), even though the Clerk of Court received and docketed the petition on December 20, 2018. Throughout this Memorandum, all dates as they pertain to the federal filings of Petitioner will reflect the Court's application of the prison mailbox rule.

This case originates from the Petitioner poisoning her mother and father with a mercury compound used for making ecstasy, resulting in the death of her mother and the hospitalization of her father. Based on this incident, a Maury County grand jury indicted the Petitioner for first degree premeditated murder and conspiracy to commit first degree premeditated murder as to her mother, and attempted first degree premeditated murder and conspiracy to commit first degree premeditated murder as to her father.

## A. Guilty Plea

By agreement of the parties, the Petitioner entered a best interest plea to attempted first degree premeditated murder with an agreed-upon sentence of twenty-nine years; the remaining counts in the indictment were dismissed. At the guilty plea hearing, the trial court questioned the Petitioner about whether she wanted to give up her right to a trial, her right to appeal, her right to testify, and if her decision to plead guilty was made knowingly and voluntarily. The Petitioner informed the trial court that she understood her rights and that it was strictly her decision to plead guilty. The Petitioner agreed that she had told her attorney everything about the incident related to the charges against her. She stated that she was well-pleased with her attorney's representation and could not have asked for better representation. The Petitioner stated that she "felt comfortable" with her attorney's efforts on her case.

The Petitioner admitted to the factual basis for the plea, which, although somewhat unclear, was summarized by the trial court as circumstances where the Petitioner admitted that she and/or her son had access to a "particular mercury containing chemical that is used in the Ecstasy making process" and that, following a disagreement about money with the victims, the Petitioner had a motive to commit the crime.

## B. Post–Conviction Proceedings

The Petitioner filed a petition for post-conviction relief, pro se. The post-conviction court appointed an attorney, and the attorney filed an amended petition, alleging that the Petitioner had received the ineffective assistance of counsel when counsel failed to assist the Petitioner in reserving a certified question of law, pursuant to Tennessee Rule of Criminal Procedure 37, with respect to alleged violations of her right to a speedy trial and her rights pursuant to the Interstate Agreement on Detainers (hereinafter "IAD"). The Petitioner alleged that she had "several conversations" with her attorney about pursuing her IAD and right to a speedy trial claims, which she alleged he never pursued. The post-conviction court subsequently held a hearing, during which the following evidence was presented: The Petitioner testified that she was indicted in this Maury County case in December 2010 while she was housed in a federal prison in Bryan, Texas, on unrelated charges. Thereafter, she was moved to a facility in Houston, Texas where she remained until August 2011. The Petitioner stated that, because of her

indictment in Tennessee, she lost privileges in the federal prison and was placed in a different custody level. She began inquiring about the IAD and eventually filled out the "paperwork" to begin the process of being brought back to Tennessee to adjudicate the present matter and get her charges in Tennessee resolved as quickly as possible. The Petitioner spoke to her counselor at the federal prison, requesting repeatedly that she receive an update about her IAD filing. She understood the IAD to require Tennessee to retrieve her from the Texas facility and transport her to Tennessee within 180 days of her Maury County indictment. The Petitioner eventually filed a Freedom of Information Act request with the Department of Justice, asking for copies of her forms requesting an IAD transfer. She received back one form which she had filled out in May 2011 asking for an update on her IAD request and referencing a document she had filed in March 2011; this form was admitted as an exhibit. The form, in part, stated that Maury County officials had not requested a transfer. The Petitioner stated that she was eventually transported to Tennessee in August 2011, at the conclusion of her federal incarceration. She was not able to bring any documents with her when she was transported.

Following transport to Maury County in August 2011, the Public Defender's Office was appointed to represent the Petitioner, and she communicated to her appointed counsel ("PD Counsel") that she wanted a speedy trial. She discussed her IAD violation claim with PD Counsel one time. He told her it was not important, and they did not discuss it further. According to the Petitioner, PD Counsel was more concerned with a damaging letter she had written to her son. The Petitioner testified that she continually contacted PD Counsel asking why she was being held without bond and why her case was not proceeding to trial, and she did not receive an adequate response, so she wrote to the trial court detailing her complaints and providing copies of her letters to PD Counsel.

In February 2013, PD Counsel approached the Petitioner with a plea agreement, which she did not accept, and the following week he withdrew as her counsel due to an undisclosed conflict of interest. PD Counsel recommended another attorney to the Petitioner, and he came to meet with her in March 2013 ("Counsel"). The Petitioner raised with Counsel her issues related to wanting a speedy trial and her IAD violation claim. Counsel seemed to understand her desire for a speedy trial and, when he called her with a plea agreement being offered by the State, he told the Petitioner that they could "pursue the speedy trial issue after the plea." Counsel did not explain what he meant by that but, after the Petitioner entered her plea, she received a letter from Counsel saying he had not forgotten about the speedy trial issue. The Petitioner recalled that they never discussed reserving a certified question of law.

The Petitioner testified that she initially had no complaints about Counsel's representation, that he explained things in full, reviewed discovery with her, hired an investigator, and employed interns to do research for her case. The Petitioner eventually accepted the State's plea offer, and as part of the deal, the State would

not oppose parole and would withdraw a pending indictment against her son. Counsel told the Petitioner that he would pursue any remedies related to the speedy trial issue after the plea was entered. He later stated that he would "handle" the speedy trial issue "on appeal."

The Petitioner testified that it was not until Counsel took over her case that she realized how little had been done by PD Counsel in the years that her case remained unadjudicated. After entering her plea, Counsel sent the Petitioner a letter, recommending a malpractice attorney to her to pursue a claim against PD Counsel, and telling her that he was "working" on the speedy trial issue and had not forgotten about her claim that she was denied a speedy trial.

On cross-examination, the Petitioner agreed that she had been convicted of multiple counts of theft, forgery, and fraud-related crimes in both State and Federal courts. The Petitioner agreed that, at the guilty plea hearing in this case, she did not raise her concerns about speedy trial violation or IAD violation with the trial judge. The Petitioner agreed that she signed the plea agreement, which stated that she had been advised of her right to a speedy trial and that she waived this right. She agreed that a request had been made on her behalf for any records that had been filed with regard to her IAD request and that a search of federal records did not recover any such documents. She agreed that, when an IAD request is filed, multiple carbon copies of the form are given to an inmate and placed in the inmate's court file; none were present in the Petitioner's file and she did not have any of the copies given to her. The Petitioner could not recall if she raised the speedy trial and/or IAD violations with Counsel at their first meeting. She agreed that she did not discuss the issues with the investigator hired by Counsel.

On redirect-examination, the Petitioner stated that she did not speak to the investigator about her IAD documentation because it was not her place to give the investigator instructions.

Counsel testified that he represented the Petitioner beginning in February 2013 and that he met with her "quite a few times." He took over the case from PD Counsel. At their first meeting, Counsel informed the Petitioner that he had requested discovery. He recalled the Petitioner being frustrated at having to change attorneys and how long her case had been pending, "about two years" by the time he was appointed. He agreed that they discussed her desire to "move the case forward" and, on a couple of occasions, asked him "what could she do about a speedy trial?" Counsel clarified that her frustration and dissatisfaction was directed at PD Counsel, and she asked what kind of complaint could be filed against him. Counsel again recalled that he discussed "the speedy trial issue" with the Petitioner "at length on several occasions."

When Counsel took over the Petitioner's case, a bond hearing had been held and, as far as he could tell, no other progress had been made on the two-year-old case. Counsel did not remember the Petitioner raising a possible IAD violation with him.

He learned through his research that she had been transported to Maury County at the conclusion of her federal prison sentence in Texas. He again stated that they had lengthy discussions about the speedy trial issue but he clarified,

> It wasn't so much like [the Petitioner stated] I want to file a speedy trial action or something like that. It was more [the Petitioner asking] why is this taking so long, it's been a year and a half or two years, ... and what's the delay and ... why can't we get this thing to trial ... it was along those lines. I mean, that led to us talking about a speedy trial.

Counsel testified that the Petitioner asked him to "research the speedy trial issue for her so she could file some kind of complaint against the Public Defender's Office." Counsel identified the letter, written by him to the Petitioner, which stated that he was "working on the speedy trial issue" for the Petitioner and had not forgotten about it. He recalled that this letter was written after the Petitioner entered her guilty plea. Prior to her entering the plea, Counsel discussed with her "the merits of the speedy trial [issue]" and "the criteria that it takes for a speedy trial." He told the Petitioner that he could not pursue the issue for her but advised that she could do so through a malpractice lawsuit against PD Counsel.

Counsel stated that he had been practicing criminal law for fourteen years and had never handled a case with a reserved certified question of law but was familiar with the procedure. He stated that he and the Petitioner never discussed reserving a certified question in her case. He agreed that employing a certified question of law to address her concerns about a speedy trial "could have been a possibility but [the case] never went that route." About the speedy trial issue, Counsel discussed the merits of filing a motion for a speedy trial in "great detail" with the Petitioner and came to the conclusion that there was no merit to proceed with such a motion.

Counsel explained that he knew the law to require a four-part test to establish a violation of the right to a speedy trial, and he told the Petitioner that he did not see how the fourth part, the prejudice "prong," could be satisfied because the Petitioner's case was set for trial. Knowing that, Counsel felt that no remedy was available to the Petitioner on a speedy trial claim. He recalled that the Petitioner's trial was continued multiple times without objection, which was potentially favorable to the Petitioner's case; Counsel felt that, instead of pursuing a motion for speedy trial, his and the Petitioner's time was better served preparing for the trial.

About the IAD request, Counsel stated that he reviewed the Petitioner's history in the federal system and learned of her incarceration and other history, but the Petitioner never mentioned to him that she had filed anything that would "trigger the detainer." He felt that a "complaint" about a lack of a speedy trial would have had to have been filed before he took over the case and that furthermore, her claim that the case was taking too long was not sufficient grounds for relief. Counsel recalled that a witness in the trial changed his story and that his testimony was going

to be damaging to the Petitioner's case, which changed Counsel's "position" in preparing for the Petitioner's trial. Counsel testified that he represented the Petitioner for approximately one year, which was shorter than a typical murder case.

Counsel read aloud from a letter he wrote to the Petitioner in 2013 stating that her case had not been delayed while he was representing her, and that, while he had constraints on his time due to his case load, her case was at the top of his list, and he would try to communicate with her more. Counsel explained to the Petitioner that the discovery files were voluminous and that he hired several interns to work on the case due to its size.

On cross-examination, Counsel stated that, in his experience, murder cases generally go to trial within a year and a half of the indictment date. He stated that, had the Petitioner mentioned the potential IAD violation to him, he would have considered it a "red flag" because it would be an "absolute defense" and resulted in the dismissal of her case. Counsel reiterated that he remembered the Petitioner talking to him about the speedy trial issue but did not recall her mentioning the detainer issue.

PD Counsel testified that he had been serving as an Assistant Public Defender for almost thirty years when he began representing the Petitioner. In his experience, homicide cases generally took eighteen or more months to be brought to trial and resolved. PD Counsel stated that, in the district where this case was docketed, the District Attorney's Office had an open file policy that allowed the Public Defender's Office to obtain discovery materials without having to file an official motion for discovery. The discovery in the Petitioner's case was "voluminous" and after receiving it he met with the Petitioner in jail to review the file. PD Counsel said that he was familiar with the IAD and that the Petitioner never mentioned to him that she had filed a request pursuant to the IAD. PD Counsel stated that any mention of the IAD would draw the attention of a criminal attorney and that he would have pursued it had the Petitioner informed him that she had filed a request that had not been responded to or acted upon.

PD Counsel recalled that he talked with the Petitioner about a speedy trial issue on numerous occasions. He recalled that there were several bond hearings in the Petitioner's case and that her bond was reduced on one occasion when the State asked for a continuance. PD Counsel did not recall any witnesses becoming unavailable while awaiting the Petitioner's trial and, in that regard, the delay did not prejudice her case. PD Counsel stated that he did not contemplate filing a motion to dismiss based on a violation of the Petitioner's right to a speedy trial because the motion would have been premature at the time of his representation. He agreed that prejudice can be shown by the length of an accused's incarceration. PD Counsel agreed that he had to withdraw suddenly from the case for an apparent conflict of interest shielded by attorney-client privilege, which he stated mandated his withdrawal based on the rules of ethics.

On cross-examination, PD Counsel testified that he represented the Petitioner for approximately a year and a half or more and met with her a number of times. The Petitioner was frustrated with her case, and PD Counsel attempted to meet with her personally as much as possible. PD Counsel agreed that the Petitioner never waived her right to a speedy trial. He had no recollection of her mentioning an IAD request in relation to her federal detention in Texas. About a motion for speedy trial claim, PD Counsel stated that, to obtain relief, the motion should be filed at the latest possible date closest to the trial date in order to satisfy the length of incarceration test. PD Counsel recalled that he did ask for a continuance of the Petitioner's case because a witness indicated he was going to testify for the State which substantially affected PD Counsel's trial strategy. PD Counsel testified that the State conveyed several plea offers but, as he understood it, the Petitioner's stance was that she did not commit the crime and wanted a trial on the matter.

The post-conviction court issued an order denying the petition:

> Specifically, [the Petitioner] claims [PD Counsel] was ineffective by failing to seek dismissal of all charges because of the [S]tate's alleged failure to honor the [IAD]. Her unsupported testimony and Exhibit 2 are the only evidence and fail to establish by clear and convincing evidence that she filed the IAD request for final disposition more than 180 days before expiration of her federal sentence. Equally important was her failure to cause the request for final disposition to be sent to the prosecuting attorney and court in Tennessee. She testified that she filed the appropriate papers in Texas in January 2011, but Exhibit 2 says, in her own handwriting, that she filed in March [2011]. Her federal sentence being served in Texas expired in August before the 180 days elapsed, if it had begun to run in March. The 180 days never actually began to run, because the request for final disposition was never sent to this Court or the prosecuting attorney.
>
> Both [PD Counsel and Counsel] testified at the PCR hearing and said that [the Petitioner] never mentioned the detainer issue, even though both conceded that speedy trial was discussed or written about several times, but always along with a reduced bail bond amount as alternative methods of effecting her release. Never did [the Petitioner] specifically mention any IAD process in Texas. Her testimony to the contrary is not credible.
> ....
>
> [The Petitioner's] failure to cause the [IAD] request to be sent to the Tennessee court and DA is fatal to her claim for post-conviction relief on that ground. Even if she complied with that requirement, any rights under IAD would have expired when her federal

imprisonment expired. [quoting *State v. Barefoot*, No. M2014–01028–CCA–R3–CD, 2015 WL 351978 (Tenn. Crim. App., at Nashville, Jan. 28, 2015), *perm. app. denied* (Tenn. May 14, 2015)].

Therefore, the Petitioner is not entitled to any relief on the IAD issue or related speedy trial issue, because any IAD rights were never triggered, and, even if triggered, expired with her federal sentence before the 180 days had run. Again, she expressly waived any rights to complain about the absence of a speedy trial during her guilty plea.

....

It is clear from the transcript of her plea hearing that [the Petitioner] is intelligent, educated, articulate, and very assertive of her opinion and rights. While she may have entertained the idea of filing a civil action against [PD Counsel], she expressly waived any issues about a speedy trial and other then known issues with [PD Counsel]. She acknowledged at least once in the foregoing transcript that she then understood any prejudice resulting to her during her representation by [PD Counsel] was no longer an issue as the result of her plea and agreed sentence. In other words, the eighteen months of her life that she thought had been wasted was now going to be credited against her agreed sentence and made any previous issues of prejudice immaterial. Therefore, she is not entitled to [any] relief on her claims of ineffective assistance of counsel. As previously stated, the Petitioner is likewise not entitled to any relief on the IAD issue.

*Bauer v. State,* No. M2017-00120-CCA-R3-PC, 2018 WL 1883488, at **1-6 (Tenn. Crim. App. Apr. 19, 2018).

## III.    Standard of Review

The petition in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). As the Supreme Court explained, the AEDPA "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571

U.S. 12, 19 (2013).  The AEDPA, therefore, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of the AEDPA's most significant limitations on the federal courts' authority to issue writs of habeas corpus is found in 28 U.S .C. § 2254(d).  Under the AEDPA, the court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The state court's factual findings are presumed to be correct, and they can be contravened only if the petitioner can show by clear and convincing evidence that the state court's factual findings were erroneous.  28 U.S.C. § 2254(e)(1).  State-court factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woo*ds, 692 Fed. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (internal quotation marks omitted)). As the Supreme Court has advised, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).  Review under § 2254(d) (1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citation omitted); *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (the substance of the claim must have been presented as a federal constitutional claim). This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review").

Claims which are not exhausted are procedurally defaulted and "ordinarily may not be considered by a federal court on habeas review." *Alley v. Bell*, 307 F.3d 380, 388 (6th Cir. 2002). Procedural default also occurs where the state court "actually . . . relie[s] on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[ ] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.

"In order to gain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate cause and prejudice for the failure, or that a miscarriage of justice will result from the lack of review." *Alley,* 307 F.3d at 386. The burden of showing cause and prejudice to excuse

defaulted claims is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (citing *Coleman v. Thompson*, 501 U.S. 722, 754 (1991)). A petitioner may establish cause by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Objective impediments include an unavailable claim or interference by officials that made compliance impracticable. *Id.* Constitutionally ineffective assistance of trial or appellate counsel may constitute cause. *Murray*, 477 U.S. at 488–89. Generally, however, if a petitioner asserts ineffective assistance of counsel as cause for a default, that ineffective assistance claim must itself have been presented to the state courts as an independent claim before it may be used to establish cause. *Id.* If the ineffective assistance claim is not presented to the state courts in the manner that state law requires, that claim is itself procedurally defaulted and can only be used as cause for the underlying defaulted claim if the petitioner demonstrates cause and prejudice with respect to the ineffective assistance claim. *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Petitioners in Tennessee also can establish "cause" to excuse the procedural default of a substantial claim of ineffective assistance by demonstrating the ineffective assistance of post-conviction counsel in failing to raise the claim in initial review post-conviction proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 5-6 (2012) (creating an exception to *Coleman* where state law prohibits ineffective assistance claims on direct appeal); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (extending *Martinez* to states with procedural frameworks that make meaningful opportunity to raise ineffective assistance claim on direct appeal unlikely); *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014) (holding that *Martinez* and *Trevino* apply in Tennessee). The Supreme Court's creation in *Martinez* of a narrow exception to the procedural default bar stemmed from the recognition, "as an equitable matter, that the initial-review collateral proceeding, if

undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Martinez*, 566 U.S. at 13. In other words, *Martinez* requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding," and that "the underlying ineffective-assistance-of-trial-counsel claim [be] a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *See id*. at 13-15. Importantly, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman*.

To establish prejudice, a petitioner must demonstrate that the constitutional error "worked to his <u>actual</u> and substantial disadvantage." *Perkins v. LeCureux*, 58 F.3d 214, 219 (6th Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original)). "When a petitioner fails to establish cause to excuse a procedural default, a court does not need to address the issue of prejudice." *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citations omitted).

Because the cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice, the Supreme Court also has recognized a narrow exception to the cause requirement where a constitutional violation has "probably resulted" in the conviction of one who is "actually innocent" of the substantive offense. *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (citing *Murray*, 477 U.S. at 496).

## IV.  **Analysis**

 With these principles in mind, the Court will turn to the examination of the sole claim raised in Bauer's petition for habeas relief:  that trial counsel was ineffective by allowing Petitioner to sign the plea agreement without reserving two certified questions of law.  (Doc. No. 1 at 5). Respondent concedes that Petitioner has exhausted this claim.  (Doc. No. 13 at 9).

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000). In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004). The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland*, 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

Petitioner alleges that trial counsel was constitutionally ineffective. As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holding of the United States Supreme Court, § 2254(d)(1); that it "involved an unreasonable application of" such law; or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. § 2254(d)(1),(2). Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, such as here, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). As the Supreme Court clarified in *Harrington*:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted).

### A.     Interstate Agreement on Detainers ("IAD") Claim

Petitioner first alleges that trial counsel was ineffective by allowing her to sign the plea agreement without reserving a certified question of law regarding issues with the IAD. (Doc. No. 1 at 5). Respondent contends that Petitioner received effective assistance of counsel because she

never told her attorneys about her IAD request and, even so, she has failed to prove prejudice because an IAD claim would not have caused the dismissal of her case. (Doc. No. 13 at 12-14).

The Interstate Agreement on Detainers, 18 U.S.C. § 2, is a compact between the states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *See Carchman v. Nash*, 473 U.S. 716, 719 (1985). Tennessee adopted this agreement to "encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Tenn. Code Ann. § 40-31-101, art. I. The IAD facilitates the transfer of prisoners "to the receiving State for trial prior to the termination of his sentence in the sending State," and "it seeks to minimize the consequent interruption of the prisoner's ongoing prison term." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).

The IAD's provisions are triggered when a "detainer" is filed with the custodial (sending) state by another state (receiving) that has untried charges pending against the prisoner. *United States v. Mauro*, 436 U.S. 340, 343 (1978). "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman*, 473 U.S. at 719. "The Detainer Agreement establishes two procedures under which the prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving State. [Article III] procedures may be invoked by the prisoner; [Article IV procedures] by the prosecuting attorney of the receiving State." *Cuyler v. Adams*, 449 U.S. 433, 443-44 (1981). Both articles apply only to persons who are serving a "term of imprisonment" in the sending state. Tenn. Code Ann. § 40-31-101, art. III(a) and art. IV(a).

Under Article III of the IAD, "during the continuance of the term of imprisonment" in a member state, a prisoner may file a written request for final disposition of criminal charges that are the subject of a detainer filed by another member state. Tenn. Code Ann. § 40-31-101, art. III(a), (b), (c). The receiving state must bring the prisoner to trial within 180 days of receiving the prisoner's request for disposition. Tenn. Code Ann. § 40-31-101, art. III(a). If the prisoner is not transferred to the receiving state and brought to trial within the 180-day time period, subject to some tolling principles, or is returned to the sending state prior to trial, the trial court must dismiss the charges with prejudice. Tenn. Code Ann. § 40-31-101, art. III(d).

Petitioner raised her ineffective assistance claim based on the IAD in her post-conviction petition, and the post-conviction court denied relief as follows:

> Specifically, [the Petitioner] claims [PD Counsel] was ineffective by failing to seek dismissal of all charges because of the [S]tate's alleged failure to honor the [IAD]. Her unsupported testimony and Exhibit 2 are the only evidence and fail to establish by clear and convincing evidence that she filed the IAD request for final disposition more than 180 days before expiration of her federal sentence. Equally important was her failure to cause the request for final disposition to be sent to the prosecuting attorney and court in Tennessee. She testified that she filed the appropriate papers in Texas in January 2011, but Exhibit 2 says, in her own handwriting, that she filed in March [2011]. Her federal sentence being served in Texas expired in August before the 180 days elapsed, if it had begun to run in March. The 180 days never actually began to run, because the request for final disposition was never sent to this Court or the prosecuting attorney.
>
> Both [PD Counsel and Counsel] testified at the PCR hearing and said that [the Petitioner] never mentioned the detainer issue . . . . Never did [the Petitioner] specifically mention any IAD process in Texas. Her testimony to the contrary is not credible.
> ....
>
> [The Petitioner's] failure to cause the [IAD] request to be sent to the Tennessee court and DA is fatal to her claim for post-conviction relief on that ground. Even if she complied with that requirement, any rights under IAD would have expired when her federal

imprisonment expired. [quoting *State v. Barefoot*, No. M2014–01028–CCA–R3–CD, 2015 WL 351978 (Tenn. Crim. App., at Nashville, Jan. 28, 2015), *perm. app. denied* (Tenn. May 14, 2015)].

Therefore, the Petitioner is not entitled to any relief on the IAD issue . . . because any IAD rights were never triggered, and, even if triggered, expired with her federal sentence before the 180 days had run.

*Bauer,* 2018 WL 1883488, at *6.

In reviewing the post-conviction court's denial of Petitioner's ineffective assistance claim based on counsel's failure to preserve her IAD claim, the Tennessee Court of Criminal Appeals began by setting forth the governing legal standard for claims of ineffective assistance of counsel:

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of

the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689–90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279–80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

*Bauer*, 2018 WL 1883488, at **6-7.

Applying *Strickland* and its progeny to the facts of Petitioner's case, the Tennessee Court of Criminal Appeals concluded that "[t]he evidence presented in this case does not preponderate against the post-conviction court's findings that Counsel was not ineffective." *Id*. at *7. In particular, the appellate court found that

> [t]he evidence presented was that the Petitioner's counsels testified that she never mentioned the IAD request to them and that, had she done so, it would have alerted them and caused them to purse a dismissal of her charges. No record of her IAD request was ever found, and the form she was able to produce did not provide evidence that she had filed a request outside of the 180–day period.

. . .

The Petitioner complains that Counsel failed to effectively represent her by not reserving a certified question of law on these issues, however, the Petitioner has not met her burden in showing that, had he done so, the outcome of her case would have been different. The Petitioner is not entitled to relief.

*Id*.

The state courts' findings, including its credibility assessments, were not unreasonable. Petitioner's attorneys testified that they were familiar with the IAD process and understood how it worked. (Doc. No. 12, Attach. 3 at 412, 487). Both attorneys testified that Petitioner never mentioned her IAD request and, had she done so, they would have attempted to have her charges dismissed on that basis. *Bauer*, 2018 WL 1883488, at *7. Specifically, trial counsel testified that Petitioner "certainly never mentioned to [him] anything about filing anything that would trigger the detainer," and "there was no red light or no trigger that made [him] even think to look at that." (Doc. No. 12, Attach. 3 at 425). According to trial counsel, if Petitioner had mentioned that she filed a request under the IAD, it "would have been a red flag" and "an alarm bell" to him. (*Id*. at 444-45). He indicated that he would have investigated the issue if it had been brought to his attention. (*Id*. at 445-47). Similarly, Petitioner's initial attorney explained that "[a]nything dealing with the [IAD] would quickly draw the attention of -- of any criminal attorney" and any IAD issue "would have been pursued." (*Id*. at 489-90).

Petitioner testified at her post-conviction hearing that she had "several conversations" with her initial attorney about pursuing her IAD claims, which she alleged he never pursued. *Bauer*, 2018 WL 1883488, at *1. She further testified that she began inquiring about the IAD and eventually filled out the "paperwork" to begin the process of being brought back to Tennessee; she repeatedly requested that she receive updates about her IAD filings to her prison counselor; she

filed a Freedom of Information Act request with the Department of Justice asking for copies of her forms requesting an IAD transfer; and she received back one form which she had filled out in May 2011 asking for an update on her IAD request and referencing a document she had filed in March 2011. *Id.*

On cross-examination during her post-conviction hearing, Petitioner acknowledged that, at the guilty plea hearing in this case, she did not raise her concerns about the IAD violation with the trial judge; she signed the plea agreement, which stated that she had been advised of her right to a speedy trial and that she waived this right; a request had been made on her behalf for any records that had been filed with regard to her IAD request and that a search of federal records did not recover any such documents; when an IAD request is filed, multiple carbon copies of the form are given to an inmate and placed in the inmate's court file; none were present in the Petitioner's file and she did not have any of the copies given to her; and, Petitioner could not recall if she raised the IAD violations with counsel at their first meeting. *Id.* at *2. Petitioner could not produce any record of her IAD request. The only evidence of her request was a document that Petitioner sent to her prison counselor, stating that she had filed "paperwork back in March" about her IAD detainer. (Doc. No. 12, Attach. 5, Ex. 2, at 629).

The Court "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." *Mitchell v. Mason*, 325 F.3d 732,737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes the state courts' credibility findings. *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2001). Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). A state court's credibility finding on

a particular issue may be overturned by a habeas court only when "evidence on the issue[ ] raised ... is too powerful to conclude anything but" that the trial court's finding was unreasonable. *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005).

The state court credited Petitioner's attorneys' testimony instead of hers. She has not identified any evidence to rebut this credibility determination. In any event, even if Petitioner had filed a detainer request on March 1, 2011, her federal sentence expired on August 12, 2011, prior to the expiration of the 180-day period. (Doc. No. 12, Attach. 2, at 257). Therefore, the 180-day deadline would not have applied to Petitioner. *See State v. Barefoot*, No. M2018-01028-CCA-R3-CD, 2015 WL 351978, at *6 (Tenn. Crim. App. Jan. 28, 2015) (holding that, when the defendant's federal sentence had expired within the 180-day IAD deadline, "the IAD became inapplicable to the [d]efendant's case"), *perm. app. denied* (Tenn. May 14, 2015). Since the IAD detainer deadline would not have applied to Petitioner, the IAD became inapplicable to Petitioner's case, and she cannot show any prejudice based on the failure to preserve a certified question of law on this issue.

Consequently, the Court finds that Petitioner has not shown that she is entitled to relief on this claim because the appellate court's determination was not contrary to *Strickland*. Neither was the appellate court's ineffective assistance determination based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts. Further, the state court's determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted. This claim is without merit and will be dismissed.

### B. Speedy Trial Claim

Next, Petitioner contends that trial counsel was ineffective by failing to reserve a certified question of law with respect to alleged violations of her right to a speedy trial. (Doc. No. 1 at 5).

According to Respondent, Petitioner received effective assistance of counsel because she would not have prevailed on a speedy trial claim. (Doc. No. 13 at 14-15).

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. "The purpose of the speedy-trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *Brown v. Romanowski*, 845 F.3d 703, 712 (6th Cir. 2017). "The remedy for a Sixth Amendment speedy-trial violation is dismissal with prejudice." *United States v. Sutton*, 862 F.3d 547, 554 (6th Cir. 2017). The Supreme Court has articulated a four-factor balancing test to determine whether a defendant has been denied the right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972). The reviewing court must consider: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice resulting to the defendant from the delay. *Id.*; *United States v. Pena*, 724 Fed. App'x 413, 420 (6th Cir. 2018).

In her post-conviction petition, Petitioner raised her ineffective assistance claim based on counsel's failure to preserve her speedy trial claim, and the trial court rejected it, finding

> [b]oth [PD Counsel and Counsel] testified at the PCR hearing and said that [the Petitioner] never mentioned the detainer issue, even though both conceded that speedy trial was discussed or written about several times, but always along with a reduced bail bond amount as alternative methods of effecting her release . . . . Her testimony to the contrary is not credible.
>
> ....
>
> Therefore, the Petitioner is not entitled to any relief on the . . . speedy trial issue . . . . Again, she expressly waived any rights to complain about the absence of a speedy trial during her guilty plea.
>
> ....

It is clear from the transcript of her plea hearing that [the Petitioner] is intelligent, educated, articulate, and very assertive of her opinion and rights. While she may have entertained the idea of filing a civil action against [PD Counsel], she expressly waived any issues about a speedy trial and other then known issues with [PD Counsel]. She acknowledged at least once in the foregoing transcript that she then understood any prejudice resulting to her during her representation by [PD Counsel] was no longer an issue as the result of her plea and agreed sentence. In other words, the eighteen months of her life that she thought had been wasted was now going to be credited against her agreed sentence and made any previous issues of prejudice immaterial. Therefore, she is not entitled to [any] relief on her claims of ineffective assistance of counsel.

*Bauer*, 2018 WL 1883488, at *6.

In reviewing the post-conviction court's denial of this claim, the Tennessee Court of Criminal Appeals agreed that Petitioner had failed to establish that counsels' performance was deficient. *Id*. at *7. The appellate court cited to trial counsel's testimony that he did not pursue a speedy trial violation claim because he did not believe Petitioner could satisfy her burden of proof:

He testified that, in his experience, a set trial date, coupled with the fact that several continuances of the Petitioner's trial had not been opposed by the defense, precluded the Petitioner from showing that she had been prejudiced by the delay; Counsel stated that the delays benefitted the Petitioner to some extent because it allowed him more time to better prepare for trial. Since he could not prove prejudice, no remedy would be available to the Petitioner, and so Counsel did not pursue a speedy trial claim and would not have reserved a certified question of law on appeal with regards to that issue. The Petitioner complains that Counsel failed to effectively represent her by not reserving a certified question of law on these issues, however, the Petitioner has not met her burden in showing that, had he done so, the outcome of her case would have been different. The Petitioner is not entitled to relief.

*Id*.

The state courts' findings were not unreasonable. Trial counsel testified that he and Petitioner had "lengthy discussions" about a speedy trial (Doc. No. 12, Attach. 3, at 409) and they discussed "the merits of a speedy trial." (*Id*. at 69). Trial counsel testified that he went over in "great detail" with Petitioner that "the speedy trial is governed by procedure and law." (*Id*.) After

analyzing the speedy trial issue, counsel concluded that the issue did not "have merit to go forward." because Petitioner could not satisfy the four-prong *Barker* test. (*Id*. at 69, 421-22). He testified that, since the case was already set for trial, he did not see an available remedy for Petitioner in filing a speedy trial motion. (*Id*. at 423).

Trial counsel further testified that he knew that the trial had been continued several times and that Petitioner had not objected to the continuance. (*Id*.) In trial counsel's opinion, Petitioner had not suffered any prejudice, which trial counsel correctly testified was the most important of the *Barker* factors. (*Id*. at 422). Trial counsel explained that, based on his legal experience, Petitioner could not satisfy the requirements for a successful motion for a speedy trial. (*Id*. at 71). He therefore believed that the defense was "better off spending our time preparing for trial." (*Id*.) Trial counsel also indicated that he did not believe the issue would warrant a certified question of law. (*Id*. at 424).

Petitioner testified at her post-conviction hearing that she had "several conversations" with her attorney about pursuing her speedy trial claims, which she alleged he never pursued; she communicated to her appointed counsel that she wanted a speedy trial in 2011; and she continually contacted trial counsel asking why she was being held without bond and why her case was not proceeding to trial, and she did not receive an adequate response, so she wrote to the trial court detailing her complaints and providing copies of her letters to trial counsel. *Bauer*, 2018 WL 1883488, at *2. According to Petitioner's testimony, after appointed counsel subsequently withdrew due to an undisclosed conflict of interest, Petitioner raised with her new counsel her issues related to wanting a speedy trial. *Id*. She testified that he seemed to understand her desire for a speedy trial and, when he called her with a plea agreement being offered by the State, he told her that they could "pursue the speedy trial issue after the plea." *Id*. After Petitioner entered her

plea, she received a letter from counsel stating that he had not forgotten about the speedy trial issue. *Id*. at *2. Petitioner recalled that they never discussed reserving a certified question of law. *Id*. According to Petitioner, counsel later told her he would "handle" the speedy trial issue "on appeal" and subsequently sent her a letter, recommending a malpractice attorney to pursue a claim against appointed counsel, and telling her he was "working" on the speedy trial issue. *Bauer*, 2018 WL 1883488, at *2.

On cross-examination, Petitioner agreed that, at the guilty plea hearing in this case, she did not raise her concerns about speedy trial violation with the trial judge; she signed the plea agreement, which stated that she had been advised of her right to a speedy trial and that she waived this right; and she could not recall if she raised the speedy trial and/or IAD violations with counsel at their first meeting. *Id*. at *2.

Findings of fact and determinations regarding the credibility of witnesses made by the state courts are presumed to be correct. *See* 28 U.S.C. § 2254(d) (1994); *Thompson v. Keohane*, 516 U.S. 99, 108-13 (1995); *Skaggs v. Parker*, 235 F.3d 261, 266 (6th Cir. 2000). For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ). A state court's factual findings are therefore "only unreasonable where they are rebutted by clear and convincing evidence and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) ) (internal quotation marks omitted).

Here again, the state courts credited counsels' testimony over Petitioner's testimony when finding that counsel had not performed deficiently in failing to preserve Petitioner's speedy trial claim. Petitioner has not rebutted the presumption that the state courts' credibility findings are correct. *Mitchell*, 325 F.3d at 737-38; *Skaggs*, 235 F.3d at 266. The Court finds that Petitioner has not shown that she is entitled to relief on this claim because the appellate court's determination was not contrary to *Strickland*. Neither was the appellate court's ineffective assistance determination based on an unreasonable determination of the facts or an unreasonable applicable of *Strickland's* standards to those facts. This claim, too, is without merit and will be dismissed.

## V.     Conclusion

For the reasons set forth herein, the petition filed by Julie Bauer seeking relief under § 2254 will be denied, and this action will be dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

Because jurists of reason would not disagree with the resolution of Petitioner's claim, the Court will deny a COA.

An appropriate order will be entered.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE